arguing among them, Mr. Steven L. Walker, Mr. Steven J. Cooper. Mr. Walker. Good morning, Your Honors. Good morning. Counsel, may it please the Court. Proceed. My name is Steven Walker, and I represent the defendant, Matias-Concepcion, on behalf of the Office of the State Apology Center. Your Honors, there is a single issue presented before you today, and that is whether the trial court erred in allowing the State to present a prior offense committed by Matias-Concepcion at his trial under the theory of modus operandi. Our position is that the trial court did err because there were not enough similarities distinguishing the truck tire theft from the auto car theft to tie it in and make it the handiwork of a known individual. There were only generic similarities. No, no distinctive features. Distinctive. Let me ask you this. The trial court excluded the Elmhurst incident as far as the details, correct? Correct. But the evidence, the defense counsel at trial conceded that there was independent evidence of a connection between the two, and quote, unquote. There's already a connection that would come out through regular evidence anyway, correct? Correct. Now, so that relationship evidence that there was a connection tended to corroborate Mr. Belmonte's eyewitness identification, correct? Yes. So wouldn't it be fair to say that the evidence of the summit connection, without the details of the offense, but just the evidence that these two individuals knew each other and were together two years earlier and 90 days before, would come in to corroborate Mr. Belmonte's eyewitness identification, correct? Your Honor, no. Why not? Simply because it would be improper propensity. It would be prejudicial to Mr. Concepcion in a way that perhaps the Elmhurst incident would not be. In the Elmhurst incident, there was no evidence of any of that. You don't understand what I'm saying. The independent evidence just of an association between these two individuals on separate occasions without any details, without information regarding an arrest or charging, just the fact that these two individuals knew each other and were together on two separate occasions prior to this offense would be relevant and admissible to corroborate the eyewitness's identification, correct? Your Honor, I think that takes us away from the issue of the modus operandi evidence. Well, I understand your point that the trial court may have erred, but nevertheless, the evidence that these two individuals were seen together on prior separate occasions would be admissible to corroborate the eyewitness's identification, correct? It would bolster the ID, wouldn't it? It would bolster the ID. Would the all of the evidence that you are talking about, the modus operandi evidence, could that be harmless because you did have a witness who positively identified him? You had the receipt in the car with his name on it. Isn't that overwhelming evidence? So regardless of whether you have this modus operandi evidence, could it not be argued as the state argued? You still could have got a conviction with or without it. Your Honor, at least with regard to the receipt, the receipt was dated at least a year prior. And to infer a continuing connection absent the own person to him would be far too speculative. Simply because he was in the car at one point a year ago doesn't mean that he had a continuing affiliation on the date of the offense with Mr. Ruiz. Well, the evidence showed that 10 days after the offense, he was with Mr. Ruiz when Ruiz reported that Van Stolden to the Wooddale Police Department, correct? Correct. So, you know, the evidence of the relationship was pretty strong anyway, correct? Correct, yes. So that explained the receipt in the car, even though you say it was old or, quote, unquote, stale. His appearance with Mr. Ruiz 10 days after the offense kind of refreshed that receipt, that it was not just some happenstance. It was because he was associated with Mr. Ruiz and had been in the past, correct? That is one possible inference, Your Honor. However, without any other evidence, it could be the case that once Ruiz's van was stolen, he reached out to an old friend who could perhaps give him a ride. There are other explanations for why Mr. Concepcion was with Ruiz that day. And that's certainly fair game. A trial does not remove it from the realm of relevancy for purposes of corroborating the eyewitness' identification. I mean, you can make an argument, but that doesn't make that citing or that relationship not relevant. Your Honor, the jury could interpret the evidence however they wish, but the issue here is the improper propensity inference. And how it would have weighed in their decision-making. Because the jury did not ask for clarification, did not ask for any explanation with regard to how to interpret this evidence, there's no way to look at the record and know how much this evidence factored into their decision-making. And because the prejudice was so great, because there were times, Mr. Concepcion, where car parts were stolen, which is distinguishable from the instant case where truck tires were stolen, the jury could only interpret that evidence as he committed this offense, so he probably committed the current offense. Is it really that different, car parts, truck tires? To the extent that the offenses are the same, they are the same in a very generic way, which would not allow the State to bring that case in, the prior case in, under the theory of modus operandi. But they could bring in certain elements. For example, just bland testimony that these two individuals were seen together on prior occasions, because that would tend to corroborate the identification of the witness, correct? Correct, but that's not what they did. That's not what happened, right. I understand exactly what you're saying. Or tools. The tools. There were no tools reported in the summit offense. In the van. In the van, of the summit offense. The only thing they found in the car were car parts. What about the hydraulic jack? In the summit offense, a hydraulic jack was stolen, but that doesn't, that again would be an improper inference, because the jack was stolen in that case. In this case, whoever took the tires was using the jack. We don't know if they stole that jack, if the jack belonged to them. But there's no evidence that, there's no link showing that the hydraulic jack that was recovered in the summit offense was later stolen, or that another hydraulic jack was stolen, and then used to commit the incident. Let's talk about the eyewitness' identification. Was there a weakness in the eyewitness' identification? Your Honor, there were some discrepancies in his testimony. He was contradicted by the detective's name, but the detective in this case indicated that certain things that Belmonte testified to on the stand, he did not actually tell them at that time, or it would have been something he would have noted in his report. That he, Mr. Belmonte, added details that were not in the report. Correct. But other than that, he was pretty consistent. He picked both individuals out of a lineup without any hesitation. Correct? I think he said it was within 10 seconds. Within 10 seconds. Correct, Your Honor. And what is our standard of review here with respect to admission of this modus operandi? Is it within the trial court's discretion? Yes. So it's abuse of discretion? It is abuse of discretion. In this case, it was entirely unreasonable to admit it under that theory. And there were no other theories under which this evidence would be anything but improper propensity. Thank you. Anything else? Go ahead. You can wrap up, Mr. Walker. You have time. Thank you. Just to highlight, I'm sure Your Honor said to use briefs and know the issues. But just to highlight, there were several differences, like key differences, that would have identified that if they were the same, would have identified this as the handiwork of Mr. Concepcion and Mr. Ruiz between the cases. In the incident offense, the blue tarp was used. There was no testimony from the blue tarp in the summit offense. Whoever stole the tires cut through a fence with bolt cutters. There's no evidence of any tools in the summit offense. The incident offense obviously involves truck tires. The other one involved, again, theft of a hydraulic jack, but other mislinked car parts. This is a car part theft. This is a truck tire theft. The receipt in the vehicle was for a salvage yard, right? I do not recall. I believe it was. If my memory serves me correctly, I think it was a salvage receipt. Go ahead. And one of the offenses, the incident offense was committed in Wooddale, which is 26 miles away from the summit. And again, any similarities between the offenses were the same as the auto part theft. It took auto parts. That's basically what it was going to. So for that reason, Mr. Concepcion, I request that this court reverse this conviction and move it forward. Thank you, Mr. Walker. You have time for rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Steven Lupa, and I'm an assistant state's attorney in DuPage County, and I'm here today on behalf of the people of the state of Illinois. Your Honors, when the trial court made its ruling admitting other crimes evidence from summit, it made a reasoned decision that took into account all of the facts and circumstances before it. It considered the time of day. It considered the location. It considered the defendant's accomplice. It considered the type of victim. It considered how the two individuals arrived at the scene. It considered who the vehicle was registered to. It considered the contents of the vehicle and the types of items stolen. And it considered these circumstances somewhat unique. Everything you just said is, you said unique. But the reality is, is everything you just said is generic. Each one of those circumstances considered in isolation might be generic to a theft, a theft occurring at night, a theft occurring a specific type of victim. But when you consider all eight or nine of those circumstances that I mentioned in their totality, as the court should, it does paint a picture of a unique theft of a unique victim in a unique manner. Don't they have to have distinctive features? What are the distinctive features between these thefts? Well, the distinctive features between the thefts, which indicate that degree of similarity that are required for modus operandi. First of all, we have both involving an automotive business. This isn't a gas station versus a Walmart. We have Giuliano's Truck Repair, and we have Summit Auto. So we can start there. In addition, they're both locations in the Chicago suburbs. I understand, as Mr. Walker indicates, they are approximately 26 miles apart. But this is not a theft in Springfield versus a theft in Chicago. We have the fact that the defendant committed the theft with the same accomplice, Angelo Ruiz. We have that they traveled to the scene. Not just in both instances a van. We have that not just. Why not just limit the testimony to the fact that these two individuals have been together in the past to corroborate the eyewitness identification? Why not just do that instead of risking reversal on a weak theory of modus operandi? Well, I think if the evidence is admissible, that the state shouldn't be deprived of its opportunity again to paint this picture of a remarkably similar theft where the jury would be able to tie both cases together and find that it's the handiwork of both individuals. But you don't need that if you can just introduce evidence. As the defense conceded, the fact that they were together in the past comes in through regular evidence anyway. Quote, unquote, comes through regular evidence anyway. And the defense made that concession during the hearing on a motion to eliminate. So the state could have just said, we just want to put in evidence that these two individuals have been associated ten days prior and two years earlier, which would be the summit association and then ten days after the offense they were together again, which would have been the same result in terms of them knowing each other to corroborate the eyewitness testimony. And MO evidence, modus operandi evidence, is ordinarily to show that a particular unique feature, like Justice Shostak mentioned, it's the handiwork of this person that's different than proof of an association. What's unique? What's the handiwork? You started, you were down to travel in a van. Did you have anything after that? Justice Shostak, after that, I was going to add that the court also considered the content of the vans, which included tools and vehicle parts. We also have, which I think is probably the most significant factor, we have very specific items that are being stolen. We have tires or items that are associated with tires. And Judge Bacalus noted that, okay, we have tires in one case, we have a hydraulic jack in the other case. But at page 90 and 91 of the record, Judge Bacalus says that a hydraulic jack would in fact be useful in terms of the removal of tires. So we know based on that that these two individuals are in the business of stealing car parts, car-related parts. And I think that goes, again, not just to show that these two individuals are connected, but to show the degree and the extent to which they are connected. And I think that kind of circles back around, Justice Burkett, to your question. I don't think that the jury should have been limited in just knowing that these two individuals were somehow connected. I think the jury should have been able to explore the degree of their connection and the extent of their connection. What you've just argued is propensity, which is exactly the reason why evidence of other crimes should not, in the ordinary case, come in. There are particular exceptions now with regard to offenses against children, certainly domestic violence, but not burglary or theft of auto parts or possession of stolen motor vehicles. You had compelling evidence of the identification of this defendant through the eyewitness identification and the conceded relationship, which defense counsel conceded. The M.O. is to establish that this is the person. You didn't need it. You didn't need propensity evidence, which is what you just argued. The jury was entitled to know that they're thieves. They steal auto parts and tires. That's propensity. Respectfully, Justice Burkett. Isn't that propensity? Isn't that what propensity evidence is? I wasn't trying to argue that the jury should have considered that because they did it before. Well, that's what you just said. I was just getting at that they should be able to explore the quality, the magnitude, or the relationship between these individuals, not just that they were friends, they went to movies together, but that the connection. They were in the business of stealing tires and auto parts. You just said that. And that's what you just said. Yes, Justice Burkett. That's why we don't allow it unless you show features that identify them as the people who committed this particular offense. How about the jury instructions in this case? Yes, Your Honor. Mr. Walker did mention that we don't know exactly how the jury considered it and what purpose it was considered for. But there was a jury instruction conference that was held, and the public defender in this case did request a limiting instruction that informed the jury how they should consider the evidence. And that discussion is at page 256 of the record. Specifically, the defense attorney asked for IPI 3.14, which tells the jury that they are not to consider that for propensity, that they are only to consider it for a very certain purpose. And there's no – well, the jury should have – the jury is presumed to follow that instruction, and I think they certainly did in this case. And, Your Honors, in addition to what I already mentioned – One other question about that jury instruction. Was it only given at the end, or did the judge make any sort of instruction or give any sort of comment as that evidence was coming in? I would have to inspect the record, Your Honor. I don't know the answer off the top of my head. I apologize. But in addition to everything that I just argued, I would note that this decision was not a rubber stamp. The trial court was given not one but two different situations, circumstances, the Elmhurst incident that we already talked to. And in considering the totality of that situation, the trial court found in its words that that was too sketchy, and therefore it was inadmissible. So this – in the end, this was a carefully measured decision that was not an abuse of discretion. When we look at whether it's an abuse of discretion, we look at whether it's unreasonable or arbitrary. This was not an arbitrary decision where the trial court just said, okay, here's the State's motion. Granted. Entirely granted. It carefully considered each aspect of the motion, and it made a measured determination based on that. If you didn't have this notice offered by evidence come in, would you believe the chances of success on this trial would have been? I believe the chances of success would have been strong. And that goes into the harmless error analysis. As has previously been discussed, Mr. Belmonte gave a strong and compelling identification of the individuals involved in this case, of the defendant. He stated that he had a clear and unobstructed view. He stated there was plenty of light and that the defendant passed within five or six feet of him several times. That's, I would submit, closer than we are right now. And he's making this pass back and forth several times. He said he had a clear visual of the defendant's face, and he was 100 percent sure that's who it was. And I think the strong evidence of the relationship between the defendant and Mr. Ruiz goes to bolster and strengthen the eyewitness's identification. Again, the eyewitness did not know anything about any prior connections or associations between these two individuals. But in spite of that, he used two separate photo lineups, and in under a minute, he identifies both individuals from two separate lineups without knowing their association, without knowing that there was a receipt found in the vehicle which indicated a prior association, and without knowing that both of those individuals arrived at the Wooddale PD to report the vehicle stolen 10 days after the offense. So I think that strengthens the identification, and as a result of that, we can have confidence in Mr. Belmonte's identification based on all of that. Your Honors, unless there are any additional questions, I would rest on the remainder of my brief, and I would respectfully ask this Court to affirm the judgment below. Thank you for your time and attention. Thank you, Mr. Ruiz. Mr. Walker, rebuttal. Very briefly, Your Honors. As the State seemingly slipped into admitting, this evidence was improper propensity inference. The only thing that could be gleaned from it was that these individuals had an association stealing car parts. As Your Honors have pointed out, and as the defense counsel admitted below, there were other ways of showing their association that would not have been as prejudicial as this evidence. How about the jury instruction? I mean, didn't the jury instruction cure any ills that he may be submitting occurred here? Your Honor, I don't believe so, because there was only one way for the jury to interpret this evidence. But that's not what they're told in jury instruction. They're told that they are to consider it for a limited purpose, correct? Right. But they admitted it under the theory of modus operandi, so they could consider it as if Mr. Belmonte, excuse me, Mr. Montesconcepcion, stole car parts in this case, and it is similar enough that it is the distinct work of Mr. Montesconcepcion in stealing tires as well. So again, the only inference there is actually propensity. So they did consider it under that theory. They improperly considered it under that theory. So it's inevitable that this comes down to improper propensity inference. And what is your response to the State's argument that it's harmless error because the evidence of their connection was there and it corroborated a very strong eyewitness identification by Mr. Belmonte? What's your response to that? The jury is in charge of Fred Zorba's husband. In this case, as a point of doubt in my theory, Mr. Belmonte admitted that he was high at that time, that he was tired, that he was behind two commercial-sized dumpsters, and he testified to seeing their faces after he illuminated them, turned on his lights, and they shined in their face. It's quite possible that the jury could have found that this illumination would have distorted their features. If you have a bright light in your face, you don't get a clear picture of what that individual looks like. To the extent that the identification after that is strong, again, it goes to the jury's credibility of determinations. And unfortunately, given how prejudicial this evidence was, we cannot simply assume that the jury would have found the same as they did. Are there any other questions? Thank you. You're welcome. We thank both parties for their fine arguments today. The court will take the case under consideration. A written decision will be issued in due course. Thank you.